M. A. GIST AND T. P. SCOTT, ADM'RS OF WILLIAM GIST, *vs.* THOMAS DRAKELY.—*December* 1844.

Upon the back of the notes of a corporation under its seal, payable to the order of *K.*, he and *G.*, endorsed their names, over which *D.*, an assignee for value, wrote as follows : "For value received, we jointly and severally promise *D.*, to pay him the amount of the within, should the *Company* make default in the payment thereof." On proof that the *Company* gave the notes in the course of their business, and *G.*, their debtor, credit in account for their amount, demand of payment from, and refusal by the *Company*, and immediate notice to *G.*, in an action of *assumpsit* by *D.* against *C.*, HELD, he was entitled to recover.

The right of action was not on the sealed instrument, but on the endorsement, a collateral or distinct contract.

Upon negotiable paper, the holder can only write over the signature of the endorser, such an endorsement as conforms to the nature of the instrument, viz : to point out the person to whom the bill or note is to be paid. ·

In actions upon notes *not* negotiable, the intention of the parties is to be considered, and effect is to be given to that intention, if no rule of law is violated.

When a defendant, for a valuable consideration, agreed to become, and by endorsing a note or single bill, *not negotiable in point of law*, designed to

become security for the money expressed in it, he is responsible for its payment.

Parties to contracts are assumed to know the liabilities imposed on them by the law, and juries are not from evidence to infer, their ignorance of such liability.

Where a corporation executes a note which its charter does not authorise, the payee may, for value, stipulate with a third party that it shall be paid, and will not then be permitted to urge the invalidity of the *Company* to make it. He was capable to bind himself to pay the debt, if it should not be paid at maturity

The rule of *Baltimore* county court, which requires that the whole testimony intended to be produced by plaintiff and defendant shall be offered, before any question of law is raised, except objections to the competency of testimony, is such a rule as that court has power to make.

When a party fails to offer any evidence, at the time he ought to have offered it, under the foregoing rule, this court will not assume that it was then out of his reach, or was afterwards discovered.

The observance of such rule may be dispensed with, by consent.

APPEAL from *Baltimore* County Court.

This was an action of *trespass on the case*, brought on the 26th *August* 1842, by the appellee, against *William Gist*, the intestate of the appellants, who died pending the action.

The plaintiff declared,

1st. Upon the instruments given in evidence, as negotiable notes, endorsed, failure to pay, and notice, &c.

2nd. Upon the common counts.

3rd. Upon the notes of the *Eutaw Company*, given in evidence, assigned by *David Keener*, for value to the plaintiff. And whereas also, heretofore, to wit, on the first day of June, in the year of our Lord, eighteen hundred and forty-one, at the county aforesaid, in consideration that the said plaintiff, at the special instance and request of the said defendant, would receive from the *Eutaw Company* a certain writing, obligatory of the said *Eutaw Company*, sealed with its seal, the date whereof, is the day and year in this count aforesaid, whereby said *Eutaw Company* promised to pay, six months after the date thereof, to the order of *David Keener*, $1826.81, for value received; and by the said *David Keener*, after the making and sealing thereof, and before the same became due and payable, to wit, on the day and year in this count aforesaid, to wit, at

the county aforesaid, ordered to be paid and assigned to the said plaintiff, by assignment in writing, signed by the said *David Keener*, who was then and there authorised to make the same, at and for the sum therein specified, and give such value therefor; he, the said defendant, then and there undertook, and faithfully promised the said plaintiff, to pay him the said sum of money in the said writing obligatory specified, upon default of the said *Eutaw Company*, so to do, when the said sum of money in the said writing obligatory specified, should become due and payable. And the said plaintiff avers, that he, confiding in the said last mentioned promise and undertaking of the said defendant, afterwards, to wit, on the day and year in this count aforesaid, did actually receive from the said *Eutaw Company* the said writing obligatory, at and for the sum therein mentioned, and gave such value therefor, to wit, at the county aforesaid. And the said plaintiff in fact saith, that the said *Eutaw Company* did not, when the said sum of money in the said writing obligatory specified, became due and payable, to wit, on the first day of December, in the year eighteen hundred and forty-one, or at any other time before or afterwards, pay the same, or any part thereof, to the said plaintiff, but wholly neglected and refused so to do, and made default therein, to wit, at the county aforesaid, (although the said *Eutaw Company* was requested by the said plaintiff so to do, to wit, on the day and year last aforesaid, to wit, at the county aforesaid,) of all which said premises, the said defendant afterwards, to wit, on the day and year last aforesaid, at the county aforesaid, had notice. Yet the said defendant, not regarding his said last mentioned promise and undertaking, but, &c.

4th. In the further consideration, that the said plaintiff, at the special instance and request of the said defendant, would receive from the said *Eutaw Company* a certain other writing obligatory of the said *Eutaw Company*, sealed with its seal, the date whereof, is the day and year in this count aforesaid, whereby the said *Eutaw Company*, promised to pay, six months after the date thereof, to the order of *David Keener*, $826.81, for value received; and by the said *David Keener*, after the

making and sealing thereof, and before the same became due and payable, to wit, &c., ordered to be paid and assigned to the said plaintiff by assignment in writing, signed by the said *David Keener*, (who was then and there authorised to make the same,) at and for the sum therein specified, and give such value therefor, he, the said defendant, then and there undertook and faithfully promised the said plaintiff, to pay him the said sum of money, in the said last mentioned writing obligatory specified, upon default of the said *Eutaw Company* so to do, when the said sum of money in the said last mentioned writing obligatory specified, should become due and payable. And the said plaintiff avers, that he, confiding in the said last mentioned promise and undertaking of the said defendant, afterwards, to wit, did actually receive from the said *Eutaw Company* the last mentioned writing obligatory, at and for the sum therein mentioned, and gave such value therefor, to wit, at, &c. And the said plaintiff in fact saith, that the said *Eutaw Company*, did not, when the said sum of money in the said last mentioned writing obligatory specified became due and payable, to wit, on, &c., or at any other time before or afterwards, pay the same or any part thereof to the said plaintiff, but wholly neglected and refused so to do, and made default therein, to wit, &c., (although the said *Eutaw Company* was requested by the said plaintiff so to do, to wit, &c.,) of all which said premises, the said defendant, afterwards, to wit, &c., had notice.

5th and 6th counts were similar to the 4th count.

The defendant pleaded *non assumpsit*.

The jury found a verdict for the plaintiff.

1st. Exception. The plaintiff to support the issue on his part, offered in evidence the two sealed bills, or notes and protests, following:

"$826.81.   *Baltimore*, June 1st, 1841.   Six months after date, the *Eutaw Company* promise to pay to the order of *David Keener*, $826.81, for value received.   Witness the seal of the company, attested by the signature of the president,

(Seal.)      David Keener, *President.*

"4th December 1841. Pro't. non-pay't., H. S. S., n. p., due ¼ Dec'r., E."

Endorsed, "DAVID KEENER," "WILLIAM GIST," "THO'S. DRAKELY," "B. F. GARDNER."

The notarial protest, dated 4th December 1841, shows that the above instrument was presented "at the place of business of the makers thereof, demanded payment of its contents, and received for answer, "it cannot be paid at present." "And that on the same day, the notary addressed a written notice to each of the endorsers of the said promissory note, informing them it had not been fully paid by the makers thereof, and that they severally would be held responsible for its payment, and left those for *David Keener, William Gist* and *B. F. Gardner,* at their respective places of business, and directed one to *Thomas Drakely, Wheeling, Virginia,* deposited it in the post office in this city.

"$826.81.    *Baltimore,* June 21st, 1841.    Six months after date, the *Eutaw Company* promises to pay to the order of *David Keener,* $826.81, for value received.    Witness the seal of the company, attested by the signature of the president,

(Seal.)        DAVID KEENER, *President.*

D. 1,016, Dec. ²⁴⁄₂₄, 1841, Pro't. non-pay't. 24th Dec. 1841."

Endorsed, "DAVID KEENER," "WILLIAM GIST," "THO'S. DRAKELY," "W. & S. WYMAN."

The protest of this note showed a demand and non-payment as before, and also, notices for *David Keener,* and *W. & S. Wyman,* delivered to them. Notice for *Wm. Gist* and *Tho's. Drakely,* left at their places of business.

The hand writing of the drawer and endorsers thereon being admitted, having, before offering the same, filled over said endorsements, upon each of said bills, which were in blank, the words following, viz: "For value received, we jointly and severally promise *Thomas Drakely,* to pay him the amount of the within bill obligatory, should the *Eutaw Company,* the obligee therein named, make default in the payment thereof, when the same shall become due."

The plaintiff further to support the issue on his part joined, proved by *William J. Cole*, a competent witness, that the single bills, hereinbefore inserted, were placed in his hands by *Mr. Drakely*, the plaintiff, for collection, some time before the institution of this suit; that soon after receiving them, he met *William Gist*, the defendant, and told him that he had the bills; *Gist* thereupon inquired of witness, whether they were some of those given for cotton? Witness replied, that he did not know, and asked *Gist*, what the *Company* wanted with cotton? to which he answered, for packing their machinery. He (witness,) further proved, that *Gist* (the defendant,) stated, in the same conversation, that *David Keener* and himself, had been appointed a committee, to raise money for the use of the *Eutaw Company*, and in consideration, that he would endorse said bills, with others, as the means of raising money for it, the *Company* agreed, to give him a credit upon the claims of the *Company* against him, he, the said *Gist*, being at the time, the debtor of the *Company*, to a considerable amount; that he did endorse said bills and others, for said purpose, under said agreement, and upon which money had been raised. The witness further proved, that in a second interview, between said *Gist* and himself, he, the witness, stated to said *Gist*, that he had examined the books of said *Company*, and found, that his indebtedness thereto, would cover all his liabilities incurred, to which *Gist* replied, that he thought he had gone further; that he intended to pay the bills in the hands of witness, but wished him to go against the *Company* and *Keener* first; and promised, that he would give witness a judgment, with a stay of execution, for the amount of the bills; that at a third interview, witness told *Gist*, (the defendant,) that *Keener* had consented to confess a judgment; *Gist* said he did not think he owed as much as he had become responsible for, on account of said *Company*, but that he would confess a judgment upon the bills; that *Gist* nevertheless, seemed to hesitate to make such confession, when witness left the nar. and order, for the judgment to be confessed, with *T. P. Scott, esq., Gist's* attorney. Witness thinks, that *Gist* mentioned *Tiffany's* name,

in connexion with the cotton.   Witness further proved, that in his second interview with *Gist*, said *Gist* stated, that the *Eutaw Company* and *Keener*, had severally made deeds of trust of their property, for the benefit of their creditors; that this statement was made before the institution of the present suit.

The plaintiff then offered in evidence the judgments, which, upon the said two single bills, he had obtained against *Keener* and the said *Eutaw Company*, in *Baltimore* county court.

"*Baltimore* county court, September term, 1842.   *Thomas Drakely*, *vs. David Keener*.   Case, &c.   23rd December 1842. Judgment by confession for \$4,000, damages in nar. and costs; to be released on payment of \$1657.12, with interest, from 24th December 1841, and costs.   Plaintiff's costs, \$8.03⅓.

Test,                    Thomas Kell, *Clerk*."

"*Baltimore* county court, January term, 1843.   *Thomas Drakely vs. the Eutaw Company*.   Case, &c.   2nd January 1843.   Judgment by confession for \$4,000, damages in nar. and costs; to be released on payment of \$1657.12, with interest, from 24th December 1841, and costs.   Plaintiff's costs, \$7.83⅓.              Test,          Thomas Kell, *Clerk*."

Whereupon, no evidence being then offered, on the part of the defendant, the plaintiff offered to the court the following prayer:

If the jury shall find from the evidence, that the single bills, upon which the present suit is brought, were executed by the *Eutaw Company*, and endorsed by *David Keener* and *William Gist*, by an agreement with said *Company*, for the purpose of raising money thereon, or purchasing goods, and with a view, by said endorsements, of giving a credit to said *Company*; and if they shall further find, that *William Gist*, the defendant, undertook and agreed with said *Company*, to make such endorsement, in consideration, that said *Company* would give him a credit for the amount of his responsibilities thus assumed, upon a claim of said *Company* against said *Gist*; and shall further find, that when said single bills became due, payment was demanded, and refused by said *Company*, and that notice thereof was given to said *Gist*, the defendant, on

the days shewn by the protests in evidence in this cause, that then the plaintiff is entitled to recover the amount of said bills, with interest, from the time the same became due.

The defendant offered to the court the following prayers:

1. That the plaintiff is not entitled to recover, under the *first* count in the nar. because the bills offered in evidence, are not promissory notes.

2. That the plaintiff is not entitled to recover, under the counts for work and labor, &c., or for materials furnished, &c., because there is no evidence, that the plaintiff performed any work and labor for the defendant, or furnished any material, as charged in said counts.

3. That the plaintiff cannot recover under the count for goods sold and delivered, because there is no evidence in support of said count.

4. That the plaintiff cannot recover under the money counts, because there is no evidence, that the plaintiff lent any money to the defendant, or that the defendant received any money for the plaintiff.

5. That if the jury believe from the evidence, that the defendant, when he wrote his name upon the back of the bills offered in evidence, intended to assume the responsibility of an endorser, of a commercial negociable instrument, in the order in which said bill was endorsed, and that the plaintiff so understood the said intended contract when he received said bills, then the plaintiff cannot recover in this suit.

6. Because there is no evidence of any agreement or authority from the defendant, with the plaintiff, under or by which, the plaintiff can write the guarantee, proposed to be written by him, over the name of the defendant.

7. Because there is no evidence of any contract, between the plaintiff and defendant in this cause, and the promise and undertaking of the defendant, offered in evidence by the plaintiff, was a *nude pact*, and void for want of present consideration when it was made.

8. Because the promise of the defendant, to pay the said writing obligatory, if the jury shall find such promise, was a

promise and undertaking, to pay and answer for the debt of another person, and there is no evidence, that the agreement and consideration for such promise, was made in writing, and signed by the said defendant.

9. Because the contract offered in evidence, is essentially different and variant from the contract declared on.

10. Because there is no evidence, that the plaintiff used due diligence, to collect the debt mentioned in said writing obligatory.

11. Because the only evidence offered by the plaintiff, to charge the defendant, is evidence of a joint contract and responsibility, by *Keener* and *Gist*, and it being in evidence, that the plaintiff has recovered judgment against *Keener*, the obligation of the said *Gist*, if it ever existed, has been discharged.

12. That the assignment of the said bills, by *Gist* to the plaintiff, not having been made in conformity with the provisions of the act of 1763, ch. 23, sec. 9, the plaintiff cannot recover against the defendant Gist, the assignor.

13. If the jury believe from the evidence, that the writing obligatory, offered in evidence by the plaintiff, was made and put in circulation, for the purpose of raising money for the use of the *Eutaw Company*, then the plaintiff is not entitled to recover, because the *Eutaw Company* had no power or authority under its charter, to make, issue, or put in circulation, the said writing obligatory, and the pretended contract, was merely void, and the promise of the defendant, if the jury should find such promise, is void for want of consideration.

14. If the jury believe from the evidence, that the bills offered in evidence, were made by the *Eutaw Company*, and passed to the plaintiff, for the purchase of cotton, by the *Eutaw Company*, and for its use, from the plaintiff, then the plaintiff is not entitled to recover in this action, because the said *Eutaw Company*, had no authority to make such a contract.

The court, (PURVIANCE, A. J.,) granted said prayer, offered on the part of the plaintiff, and likewise, the 1st, 2nd, 3rd and 4th prayers offered on the part of the defendant, and rejected the 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th and 14th

prayers, offered by the said defendant; to which opinion of the court to the jury, granting said prayer of the plaintiff, and rejecting said prayers of the defendant, the defendant excepted.

2ND EXCEPTION. At the trial of the above cause, the plaintiff having offered in evidence to the jury, the testimony stated in the first bill of exceptions, and no testimony being offered on the part of the defendant, the prayers stated in said first bill of exceptions, having been submitted by the plaintiff and defendant, and discussed before the court, and the court having pronounced an opinion and decision thereon, the defendant then offered to swear *David Keener, Philip H. Coakley* and *John J. Harrod,* for the purpose of proving, that the bills offered in evidence by the plaintiff, were made and endorsed for the accommodation of the *Eutaw Company,* and were taken and discounted by the plaintiff at an usurious rate of interest. To the right of the defendant, at this stage of the cause, to offer which said evidence, the plaintiff objected, and relied in support of his objection on the twenty-fifth rule of the court, and the court refused to permit said evidence, under the circumstances stated, to go to the jury. To which opinion and refusal, the defendant excepted.

It was agreed, that the charter of the *Eutaw Company,* may be read at the trial of this cause, in the Court of Appeals, from the printed statute books, and that the 25th rule of *Baltimore* county court, may be read from the printed rules.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE and MAGRUDER, J.

By LUCAS and T. P. SCOTT for the appellants, and
By J. H. B. LATROBE for the appellees.

MAGRUDER, J., delivered the opinion of this court.

The *Eutaw Company,* by two instruments, to which its corporate seal was affixed, promised to pay "to the order of *David Keener,*" the sum of money expressed in each of them.

On the back of these instruments, *David Keener* first, and afterwards *Gist*, (the original defendant in the court below,) wrote each of them his name. Before offering these sealed instruments in evidence, the blank that was left over their names, was filled up with these words. "For value received. We jointly and severally, promise *David Drakely*, to pay him the amount of the within writing obligatory, should the *Eutaw Company*, the *obligees* therein named, make default in the payment thereof, when the same shall become due." Upon this, the present suit was brought.

The court below, at the instance of the appellee, instructed the jury, that he was entitled to recover in this suit, the amount of said bills, if the same were executed by the *Eutaw Company*, and endorsed by *Keener* and *Gist*, by an agreement with said *Company*, for the purpose of raising money thereon, or purchasing goods, with a view by said endorsement, of giving credit to said *Company;* and if they should find, that the defendant (in the court below,) undertook and agreed with said *Company*, to make such endorsement in consideration, that the said *Company* would give him a credit for the amount of said responsibilities thus assumed, upon a claim of said *Company*, against said *Gist;* and shall further find, that when said single bills became due, payment was demanded, and refused by said *Company*, and that notice thereof was given to said *Gist*, on the days shown by the protests in evidence, in this cause. Of this instruction the appellants complain.

Upon what grounds is it asked of us to say, that the court below erred in giving this instruction?

It was frequently assumed, in the course of the argument, that sealed instruments are the causes of action in this case, and authorities were cited to prove, that instruments of that description, if left blank, could not be filled up by the owner of them. But, this action is grounded not upon the promises of the *Eutaw Company*, which are to be found only in sealed instruments, but upon alleged written promises of the defendant, in the court below, to which there were no seals. Many of the cases therefore, with a reference to which, we have been

furnished, afford us no information, with regard to the law of this case. Those alleged promises, although on the same piece of paper, may be collateral to, or distinct from, and no part of the obligations of the *Eutaw Company.*

Much stress was, in the course of the argument, laid upon the circumstance, that the obligations of the *Eutaw Company,* were not promissory notes, or negotiable paper; and it seemed to be conceded, that if they had been instruments of that description, the defendant in error, would have been entitled to recover; the authorities, however, would not appear to lead us to this conclusion. Chancellor *Kent* says, (3 *Com., p.* 59, 1*st edit.,*) no other use can be made of a blank endorsement, on a note or bill of exchange, in filling it up, than to point out the person to whom the bill or note is to be paid. In the case of *Moies vs. Bird,* 11 *Mass. Reports,* 436, *Justice Parker,* pronouncing the opinion of the court, said : "Had the notes been made payable to him, and negotiable in its form, the plaintiff would have been restricted to such an engagement, written over the signature, as would conform to the nature of the instrument. In such case, the defendant would have been held as endorser, and in no other form, for such must be presumed to have been the intent of the parties to the instrument." But this note was not made payable to the defendant, and was therefore, not negotiable by his endorsement. What then was the effect of his signature? It was to make him absolutely liable to pay the contents of the note. He puts his name upon a note, payable to another, in consequence of a purchase made by his brother, in a day or two after the bargain was made, knowing that he could not be considered in the light of a common endorser, and that he was entitled to none of the privileges of that character. He leaves it to the holder of the note, to write any thing over his name, which might be considered not to be inconsistent with the nature of the transaction. In *Seabury vs. Hungerford,* 2nd *Hill's N. Y. Rep.* 80, the court say, "when a contract cannot be enforced, in the particular mode contemplated by the parties, the court, rather than to suffer the agreement to fail altogether, will, if possible, give effect to it in some other way."

This is an attempt to charge the defendant with the amount due on two obligations; because of an endorsement thereon of his name in blank, and of course, the obligation is not, speaking technically, a negotiable instrument. *Justice Story*, in his able work on the law of promissory notes, page 587, speaking of notes, with the name endorsed in blank thereon, says, "these cases have been either, *first*, where the note was not negotiable, or *second*, where it was negotiable," and then . adds: "In the former class of cases, it has been held, that if the blank endorsement was made, at the same time as the note itself, the endorser ought to be held liable, as an original promisor or maker of the note, and that the payee is at liberty to write over the signature, 'for value received, I undertake to pay the money within mentioned to *B,*' the payee."

It is not the duty of this court to say, upon how much less proof, than was offered by him, the plaintiff, in the court below, might have recovered the amount of his claim. He might perhaps, have regarded this as a contract, like that spoken of by the *Supreme Court of the United States*, in the case of *De Wolf against Rabaud and others*, 1st *Peters*, 476, "a trilateral contract, each as an original promise, though the one may be deemed subsidiary, or secondary to the other, a credit not given solely to either, but to both; not as joint contractors, on the same contract, but as separate contractors, upon co-existing contracts, forming parts of the same general transaction." It may be, that the plaintiff below, might have filled up the blank somewhat differently, and thereby, have dispensed with the necessity of offering some of the proof which he adduced, but it is not perceived, that the blanks are filled up, otherwise than as the holder of the notes, was at liberty to fill them up, or that the defendants have any cause to complain of the insertion of any word, which, consistently with the nature of the transaction, might have been omitted.

Indeed, in order to sustain this decision of the court below, it is not necessary to rely on very modern decisions. The principles settled by the case of *Russell vs. Langstaff*, *Doug.* 514, and the various cases in the books, (see 2nd *H. Blac.*

298, *note,*) brought upon bills, payable to a fictitious payee, *or order*, would seem to be sufficient for our purpose. If in cases like those now spoken of, such objections to a recovery were over-ruled, it is difficult to come to a conclusion, that they can be fatal objections to a recovery in this suit. In the first case, (that in *Douglass,*) the defendant endorsed several notes, all of them at the time blank; that is, without any sum, date, or time of payment, mentioned in the notes. The defendant's counsel, in the case, might well say, that by the signature, the defendant *contracted for no given sum;* that notes, without sum or date, were waste paper, and might insist, that the declaration, which alleged a pre-existing note, made previous to the endorsement, was at war with the facts of the case. *Lord Mansfield* however held, that it was a clear case, in favor of the plaintiff.

In the suits upon notes, or bills, payable to a fictitious payee, or order, it was strenuously argued, that the *Law Merchant,* forbade notes payable *to order,* to be treated as notes payable *to bearer.* The court however, decided, that if the rules of law prevented the instrument from operating, according to the words used therein, it may be stated in such a manner, that the law will give effect to them. The intention of the parties is to be considered, and effect is to be given to that intention, if no rule of law is thereby violated. In this case, we must not doubt, for the defendant below admitted to the witness, and the jury have, by their verdict found, that the defendant in the court below agreed for a valuable consideration, to become, and by endorsing them, designed to become security for the money expressed in each instrument.

It appears by the bill of exceptions, that the jury were put in possession of acknowledgments by *Gist,* (the defendant below,) that he and *Keener,* were to raise money for the *Eutaw Company;* and of his further acknowledgments, that in consideration of his, (*Gist,*) endorsing the bills, the *Company* agreed to give him credit upon the claims, which it had against him, (he being at the time, the debtor of the *Company;*) that he endorsed the bills in fulfilment of said agreement, and upon

the bills so endorsed, money was raised. By the terms of ·the contract, then, between the *Company* and *Gist*, (for which the latter received a valuable and ample consideration,) he was bound to become security for the payment of those bills of the *Eutaw Company*, and this, before any person was the owner of them; and moreover, that he was to become such security, by the endorsement of, (or writing his name on) them. Surely upon such testimony, (which the jury were to believe,) the appellee was entitled *ex æquo et bono*, to demand of the defendant below, the amount of notes, the payment of which, to the holders of them, was to be secured by his endorsement, and the amount of which, was to remain in his own hands, in order to save him from any possible loss. The man who becomes a party to such a contract, for such a purpose, and for such a consideration, is forbidden, by every thing like reason and justice, to deny, that the appellee became the owner of the bills at his special instance, and because of his undertaking to pay the holder of them their amount, if default was made by the makers of them. Surely, of such a transaction it may be said, as was said by *Baron Hotham*, in 1*st H. Blac. Reports*, 584, "unless some *stubborn* rule of law stand in the way of the present judgment, it ought to be supported."

Immediately following the prayer of the appellee, we read in the bill of exceptions, that "the defendant offered to the court the following prayers." These prayers, (fourteen in number,) are nearly all of them points, which might be legitimately insisted upon by the counsel, whose duty it was in the court below, or in this court, to argue, that the court ought not to give the instruction, of which we have already spoken. Upon a few of them, some remarks will be made.

The fifth was properly rejected. It required the court to assume, that the parties *might* not have known, that single bills were not such commercial, negotiable instruments as promissory notes, or might not know, what was the liability which the defendant below assumed, when he endorsed them. The law requires us to assume, that the parties did understand the contract into which they entered, and the liability which

·the defendant below assumed. It would have been improper to authorize the jury, to infer from the evidence the existence of such ignorance among the parties, and if so, to instruct them that if it existed, the verdict must be for the defendant.

With respect to the thirteenth, and the next point, (which may be considered in connection with it,) they seem to assume, that if the *Eutaw Company* had no authority (to be found in its charter,) to make those writings obligatory, then the defendant could not oblige himself, to pay to the holders of them, the sums of money expressed in either of them. It is thought, that it did not lie in the mouth of the defendant below, to make such an objection. He was capable of binding himself to pay the debts, if when they became due, they remained unpaid.

In regard to the supposed speculation in cotton, the testimony (derived from the defendant below,) was, that the cotton purchased, was "for packing their machinery." By this, it can only be understood, that it was purchased to pack, in order to send away, the articles in which the *Company* was authorized by its charter to deal. For such a purpose, the *Company* was surely authorized to buy cotton upon credit as well as for cash, and might give its bonds as well as the verbal promise of any of its members, or its officers, for payment of the purchase money.

For reasons, which have already been suggested, we think there is no error in the refusal by the court to give the other instructions, which were not given.

There is another exception taken by the plaintiff in error, of which we will now dispose.

A rule of *Baltimore* county court, then existing, commenced in these words. "The court will require in all cases, that the whole testimony intended to be produced by both plaintiff and defendant, shall be offered before any question of law is raised, except objections to the competency of testimony." In this case, after all the points submitted by the defendant, as well as plaintiff, had been decided by the court, the defendant offered to introduce other testimony. The plaintiff objected to its introduction, "at this stage of the cause," relying on

44    v.2

the rule of court above mentioned, and the court "refused to permit the testimony, under the circumstances stated, to go to the jury." Was there error in this refusal, for which an appellate court ought to reverse the judgment of the court below?

This court has heretofore (*Wall vs. Wall*, 2 *H. & G.* 82,) said, "there exists no discretion in an inferior court, to dispense, at pleasure, with their own rules, or to innovate upon established practice; and a party injured by such a course, has an undoubted right to seek redress in this court. Every suitor is interested in the interpretation of the rules of court, applicable to his case; and an erroneous judgment of the county court in relation to them, may in many cases be as vitally injurious to him, as a wrongful judgment upon the law, which may govern his case." Again, in the case of *Dunbar vs. Conway*, 11*th G. & J.* 97, "this court has always regarded a legitimate rule of a court, as prescribing a law to the court. The proper office of such a rule, is to establish fixed and settled practice, to which the court is required to conform, and any error of opinion, in respect *to its legal effect, or to its application to a particular case*, will entitle the party injured to redress by appeal." It is believed, that the power of this court, in acting upon appeals of this description, as well as the duties of the court below, in regard to the observance of its own rules, are accurately defined in the above extracts, from its former decisions; and that a plaintiff in error, who brings such a complaint as this before us, must show that he is authorized by these former opinions of the court, to prefer such a complaint against the court below. Rules of court, adopted for the dispatch of business, and the impartial administration of justice, must be written, so that all may understand them, and when adopted, must be a law to the court, as well as to others. But it can never be a question in this court, whether a rule adopted by any inferior court, is just such a rule, as in the opinion of this court, or a majority of its members, ought to be adopted in preference to any other rule, calculated and designed to accomplish the same object.

It cannot be alleged, that in this case, the court dispensed with its rule, or changed its practice. The question then must be, had the court power to make such a rule, and because of its existence, deprive the defendant of an opportunity of introducing testimony, at a time, when according to the rule, it was inadmissible?

It appears by the record, that the defendant below had not previously offered any testimony. This however, is unimportant, as it must be taken for granted, that he had declined to offer any, at the time when the rule of court required or permitted it to be offered. The testimony offered, if it had proved the fact for which it was offered, might have rendered wholly unnecessary a discussion of the very many points of law, upon which the defendant below, seemed to the court, to be disposed to rest his case. Why this testimony was not offered at an earlier stage of the trial, is not shown. We cannot, therefore, assume, that at the time when he ought to have submitted it, according to the rule of court, it was out of his reach, or was afterwards discovered.

A court constituted as this is, would necessarily feel reluctant to entertain the question, what rules would be the best for, and therefore ought to be adopted by, the courts of any one of our judicial districts.

How long the parties shall be at liberty to introduce fresh testimony, or at what stage of the trial this privilege shall cease, it is proper that a rule of court should determine; and yet, it is not to be believed, that any rule for that purpose, which can be devised, would be equally proper for every district.

There may be reasons, oftentimes, why either party, and especially the defendant, should be permitted to settle the law of the case, before he consumes the time of the court, in examining witnesses, whose testimony may afterwards be found to be wholly unnecessary. But, who is to be the judge of this, in any particular case? Certainly not the party himself. He may suggest this course, with his reasons for preferring it, and if the court and his adversary approve of it, none would

say, that the observance of the rule might not be dispensed with. But ought such a course to be pursued, if the court, when the reasons for preferring it are made known, thinks, that the rule ought to be adhered to?

It is very much in favor of the rule under consideration, that it was adopted as a rule for city business, at least fifteen years ago, and yet, that it is now for the first time, it is believed, a subject of complaint in this court.

JUDGMENT AFFIRMED.