# JOSEPH MURDOCK

## *vs.*

## LILLIAN SCHINDEL et al., Executors.

*Sealed instruments: actions on—; burden of proof; signature and seal; possession; presumptions from endorsement of payments on note. Speculative evidence: inadmissible.*

Where an instrument sued on as a deed or single bill is in the possession of the plaintiff, and contains a seal opposite the name of the maker, whose signature thereto is proved, it is admissible in evidence; and it is for the jury to find if it was sealed by the defendant or maker.                pp. 640-641

To prove the signature to a single bill, letters or other writings of the maker, proved to be in his handwriting, may be given in evidence for the purpose of comparison.          p. 641

In a suit on a promissory note, evidence of a conversation that a witness had with the maker, in which he spoke of some favor the payee had done him, is inadmissible when it is not shown to have any reference to the note sued on.          p. 641

Evidence which serves only as a basis for speculation should not be allowed to go to the jury.          p. 641

Rulings of the trial court, even though erroneous, will not be made the basis of a reversal on appeal, when they could have caused no injury to the appellant.          p. 642

Endorsements on the back of a note of payments made, when the note was in the possession of the payee, are admissible, as admissions against interest and as tending to show the true amount still due.          p. 644

*Decided May 17th, 1916.*

Appeal from the Circuit Court for Washington County. (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Frank G. Wagaman* and *Albert J. Long,* for the appellant.

*C. A. Little* (with whom was *J. A. Mason* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

The appellant, Joseph Murdock, brought suit in the Circuit Court for Washington County against the executrix and executors of Andrew J. Schindel, deceased, on the following single bill:

"$3,000.00.        Hagerstown, Md., Sept. 14th, 1903.

Two years after date I promise to pay to the order of Joseph Murdock Three Thousand Dollars ($3,000) at four per cent. interest, for value received. Witness my hand and seal.

"A. J. Schindel.   (Seal)."

Issues were joined on the plea of *non est factum* and a traverse of a plea that the alleged deed or single bill was procured by fraud, and the plaintiff has brought this appeal from a judgment in favor of the defendants.

The record contains seven exceptions, the first six being to the rulings of the Court on the evidence, and the seventh to the granting, at the conclusion of the plaintiff's evidence, of the defendants' prayers withdrawing the case from the jury on the ground that the plaintiff had offered no evidence legally sufficient to entitle him to recover.

The sixth exception, which presents the important question in the case, is to the refusal of the Court to admit the alleged single bill in evidence, and the prayers granted at the instance of the defendants rest upon that ruling.

The whole single bill was typewritten, except the signature of the maker and the seal, which were written and made with "pen and ink." It was in the possession of the plaintiff, and before offering it in evidence the plaintiff produced a number of witnesses who testified that they were familiar with the signature of Andrew J. Schindel, the defendants' testator, and that the signature to the single bill was his signature. He had also put in evidence a number of records containing the signature of the testator, and several letters and postal cards proved to have been written and signed by him.

The plea of *non est factum* imposed upon the plaintiff the burden of proving the execution and delivery of the single bill sued on and offered in evidence, and the theory upon which it was objected to by the defendants and excluded by the Court was that the plaintiff had offered no evidence to show that it was *sealed* by the testator. The contention of the appellees, defendants, is based mainly, if not entirely, upon the language of CHIEF JUDGE ALVEY in *Keedy* v. *Moats,* 72 Md. 325. A careful examination of the record and opinion in that case will show that the decision is not open to the construction relied on. The suit was on a single bill, and the defendant pleaded *non est factum,* and that the alleged single bill was procured by fraud. The plaintiff offered the single bill in evidence, the whole of which, except the signature, was in his handwriting, and also offered evidence tending to show that the signature thereto was the signature of the deceased. The defendant offered evidence tending to show that the instrument sued on was procured by fraud and that the signature of the maker was not the genuine signature of his testator. The Court below granted the first prayer of the plaintiff which instructed the jury: "That the possession of the single bill in suit by the plaintiff is *prima facie*

evidence of the sealing and delivery of the same by the deceased, to the plaintiff, provided the jury find that the single bill was subscribed with the signature of the defendant's testator, in his own proper handwriting." The verdict and judgment being in favor of the plaintiff the defendant appealed, and in passing upon this prayer of the plaintiff, CHIEF JUDGE ALVEY said: "The general issue plea of *non est factum,* denying as it does the allegation in the declaration that the single bill sued on was the deed of the defendant's testator, threw the whole burden of proof upon the plaintiff, of the execution of the single bill, including the delivery thereof by the obligor. *Bank* v. *Ridgely,* 1 H. & G. 416. The execution of the deed, to make it effective, consists of the signing and sealing thereof, followed by the act or ceremony of delivery. But proof of execution and possession is sufficient evidence, *prima facie,* of delivery, and in the absence of all proof on the part of the defendant, would entitle the plaintiff to a verdict. *Edelen* v. *Sanders;* 8 Md. 118. Mere proof of possession, however, in no manner relieves the plaintiff of the burden of proving the execution of the instrument as the deed of the obligor, that is, that the instrument was duly signed or sealed by or for him; for the mere possession of the instrument has no evidential relation to the existence of the seal. * * * The first instruction given was erroneous and calculated to mislead the jury, because, by it, the jury were told that mere possession of the single bill by the plaintiff was *prima facie* evidence, not only of the delivery, but also of the sealing of the note, if they believed the signature thereto was in the handwriting of the defendant's testator. The existence of the seal of the party to be charged, the thing that makes the instrument a deed as distinguished from a promissory note, was the substantial matter put in issue by the plea; and the mere possession by the plaintiff, upon the proof simply of the signature, did not prove the essential act of sealing of the instrument; and especially not when it is admitted that the whole instrument is in the handwriting of the plaintiff, except only the signa-

ture thereto,—the seal being no part of the subscribed name of the party. The jury should have been left to find, from all the facts and circumstances of the case, whether the note sued on had been duly executed as a deed, by signature and seal of the defendant's testator. For though the scroll may have been made or fixed to the note by the plaintiff, if the maker of the note subscribed his name opposite the scroll thus made, he thereby adopted the scroll as his own seal, as completely as if he had made it himself." When the language we have quoted is applied to the record in that case, it is clear that Judge Alvey did not mean to say it was necessary for the plaintiff to prove that the testator sealed the instrument, by a witness who saw him make the seal or write his name opposite the seal, previously made, or by the admission of the testator that he had sealed it, for notwithstanding the alleged single bill, the testimony of witnesses who stated that the signature thereto was the signature of the testator, and that they heard him say that he owed the plaintiff a *note*, and certain "notes and writings containing the admitted signature of the" testator was all the evidence in the case to show that the instrument sued on was the single bill of the testator, he said: "The jury should have been left to find, from all the facts and circumstances of the case, whether the note sued on had been duly executed as a deed, by signature and seal of the defendant's testator." The learned Judge was discussing a prayer which instructed the jury that the mere possession of the alleged single bill was *prima facie* evidence, not only of the delivery, but also of the sealing of the note, if they believe that the signature thereto was the signature of the testator, and what he meant was that the possession of the note by the plaintiff, and proof of the signature of the testator were not, alone, sufficient to prove the sealing of the instrument by the testator. But he did not mean that the *alleged single bill*, together with proof that the signature thereto was the signature of the testator, and that it was in the possession of the plaintiff was not sufficient evidence from which the jury could find that the instrument

sued on was the deed of the defendant's testator, for the
Court held just the contrary. · *Keedy* v. *Moats,* does not
therefore sustain the contention of the appellees, but is an
authority in support of the admissibility of the evidence ex-
cluded in the sixth exception.

The instrument sued on, where it contains a seal, is in
possession of the plaintiff, and is shown to have been signed
by the defendant's testator, may in itself be evidence that it
was sealed by the maker, and especially is this so where the
whole instrument, except the signature and seal, is type-
written, and it contains a statement that it was signed and
sealed by the maker. This rule is in harmony with the deci-
sion in *Keedy* v. *Moats, supra,* and earlier decisions in this
State, and a different rule would render it very difficult, if
not impossible, where the obligor is dead, to prove the execu-
tion of a deed unless it was witnessed by a third party. In
*Trasher* v. *Everhart,* 3 G. & J. 234, the Court said: "In
this case, the execution of the bill is admitted, and the plain-
tiff has possession of it which is evidence of delivery; and
there is nothing to show that the scrawl was not attached,
when it was executed and delivered, and the presumption al-
ways would be, that the seal was affixed to the instrument on
its delivery, in the absence of evidence to the contrary." In
the case of *Pannell* v. *Williams,* 8 G. & J. 511, the Court
said: "At the trial, the plaintiff to support the issue on his
part, offered in evidence the bill obligatory of James Wil-
liams, which was in his, plaintiff's, possession, and purported
to have been signed and sealed by James Williams, and at-
tested by a certain John S. Williams. The plaintiff further
proved, but not by the subscribing witness, that the name of
the defendant thereto subscribed, was in the proper hand-
writing of said defendant, James Williams, and there rested
his case. The defendant objected, that the evidence so offered
was not sufficient evidence, of the signing, sealing, and de-
livery of the said bill obligatory, and prayed the Court to
direct the jury, that the said evidence was not sufficient to
support the issue on the part of the plaintiff, the subscribing

witness being then in Court. Which direction the Court gave. The plaintiff excepted, and this presents the question now for adjudication. We are of opinion that the Court erred in their instruction to the jury in this cause. * * * The plaintiff being in possession of the bill obligatory, and having proved that the name of the defendant thereto subscribed was in the proper handwriting of said defendant, the possession by the plaintiff was *prima facie* evidence of the due delivery of the bond, which the Court should have permitted to have gone to the jury by them to be determined. 1 H. & G. 418." In the case of *Glenn* v. *Grover,* 3 Md. 212, the Court said: "But the agreement is admitted to have been signed by the parties, though the appellant's counsel contends that this admission does not imply proof of the time of its execution. If the handwriting of a party who signs a paper be proved, the contents are also thereby established until the contrary appears. Possession of a bond by the obligee is *prima facie* evidence of delivery and acceptance. *Union Bank* v. *Ridgely,* 1 H. & G. 418. Where proof of the handwriting of the obligor was offered on the plea of *non est factum,* although the subscribing witness to the bond was in Court and not examined, it was held to be evidence of the signing, sealing and delivery, and should have been left to the jury as *prima facie* proof. *Pannell* v. *Williams,* 8 G. & J. 511. See also *Milburn* v. *State,* 1 Md. 11. There is no reason for saying that the execution and delivery do not import that the instrument is truly dated. If the rule were otherwise no writing could be safely received except in the presence of witnesses." In the case of *Jackson* v. *Myers,* 43 Md. 452, Judge Alvey, referring to the case of *Gist* v. *Drakely,* 2 Gill, 330, said: "There, the two notes executed by the corporation, though in the ordinary form of promissory notes, bore upon their face such evidence of design as to leave no doubt of their real character. They bore the regular impress of the seal, attested by the signature of the president; the notes concluded with the words 'Witness the seal of the Company, attested by the signature of the president.'" It is

said in 2 *Greenleaf on Evidence* (16th Ed.), secs. 296-297,. where possession of a deed by the plaintiff is said to be *prima facie* evidence of delivery: "If the deed bears on its face a declaration that it was signed and sealed, and there is a seal upon it, proof of the signature is evidence to be left to, the jury that the party sealed and delivered it, even though the witness does not recollect whether or not it had a seal at the time of attestation," and in 35 *Cyc.* 1175, it is said: "It is for the jury to determine whether the seal was affixed to the instrument, or, having been attached, has since been detached." In the case of *Brolley* v. *Lapham,* 13 Gray, 294, JUDGE BIGELOW said: "The Court erred in ruling that there was no proof of the due execution of the paper offered by the defendant to be submitted to the jury. Although the plaintiff denied that there was a seal upon it when he affixed his signature to it and the subscribing witness was unable to testify to the fact, yet the instrument itself, when it was signed by the plaintiff, purported to be under seal. It was therefore on its face a direct and solemn admission in writing by the plaintiff that the instrument was then under seal, and well authorized the defendant to contend before the jury that the plaintiff, in denying that the instrument was under seal when executed by him, was either mistaken or testified falsely," and in the case of *Todd* v. *Union Savings Institution,* 23 N. E. 299, the Court of Appeals of New York,. speaking through JUDGE BRADLEY, said: "That situation was, and without the seal would not have been, consistent with the declaration of the grantor and of the subscribing witness, appearing upon the instrument, to the effect that it was sealed, which, in connection with. the fact that, when afterwards found and recorded, a seal was upon it, requires the conclusion that it was sealed at the time of delivery, unless there was some evidence interrupting the way to such conclusion."

The rule deducible from the authorities cited, including *Keedy* v. *Moats, supra,* is that where the instrument sued on as a deed or single bill is in possession of the plaintiff, and

contains a seal opposite the name of the maker, whose signature thereto is proved, it is admissible in evidence, and it is for the jury to find whether it was sealed by the defendant or maker.

The first exception is to the action of the Court in striking out the evidence of the witness Boyer, the proprietor of the Baldwin House, who testified that the testator paid his board bill at the hotel by a check, which check was, after his death, presented to one of his executors and paid. This evidence was offered in order to establish the signature of the testator to the check so that the jury could compare it with the signature to the single bill, and was admissible for that purpose.

In the third exception the plaintiff offered to prove by the witness that she had a conversation with the testator about two years prior to the trial, "about money matters," and that the deceased stated to her that the plaintiff had done him a great favor, and asked the witness the following question: "Did you ever have any conversation with Mr. Andrew J. Schindel as to whether or not your brother Joseph Murdock had done him any favor." There was no error in the refusal of the Court to permit the question to be answered. There was nothing in the question or in the proof offered to indicate that the statement of the testator referred to the single bill in suit, and it would have left the jury to speculate as to what the particular "favor" was.

We see no objection to the evidence excluded in the fourth exception. Miss Murdock had testified that the letter was in the handwriting of and signed by the testator, and it was offered for the purpose of allowing the jury to compare the signature of the testator with the signature on the single bill in suit. Code (1912), Art. 35, sec. 7; *Williams* v. *Drexel,* 14 Md. 566; *Keefer* v. *Zimmerman,* 22 Md. 274; *Gambrill* v. *Schooley,* 95 Md. 260. There was nothing in the letter that was calculated to prejudice the jury, and there is no reason why it should be excluded on that ground. While we think the evidence referred to in this and the first exception was admissible, we would not be disposed to reverse the

judgment because of the rulings therein, if they were the only errors in the case, for there were a number of records and other papers in the case containing the handwriting and the signature of the testator which could have been used by the jury for the purpose of comparison, and the plaintiff could not, therefore, have beeen seriously injured by the rulings of the Court.

The second and fifth exceptions may be disposed of together. In the second the plaintiff offered to prove by the witness, Miss Murdock, that the indorsements on the single bill were in the handwriting of the plaintiff, and in the fifth exception the plaintiff offered in evidence the single bill and the endorsements thereon. It is said in 1 *Greenleaf on Evidence* (16th Ed.), sec. 152a: "The evidence of indebtment, afforded by the endorsement of the payment of interest or a partial payment of the principal, on the back of a bond or other security, seems to fall within the principle we are now considering, more naturally than any other; though it is generally classed with entries made against the interest of the party. The main fact to be proved in the cases, where this evidence has been admitted, was the continued existence of the debt, notwithstanding the lapse of time since its creation was such as either to raise the presumption of payment, or to bring the case within the operation of the statute of limitations. This fact was sought to be proved by the acknowledgment of the debt by the debtor himself; and this acknowledgment was proved by his having actually paid part of the money due. It is the usual, ordinary, and well known course of business, that partial payments are forthwith indorsed on the back of the security, the indorsement thus becoming part of the *res gestae.* Wherever, therefore, an indorsement is shown to have been made at the time it bears date (which will be inferred from its face, in the absence of opposing circumstances), the presumption naturally arising is, that the money mentioned in it was paid at that time. If the date is at a period after the demand became stale, or affected by the statute of limitations, the interest of the creditor to fabricate

it would be so strong as to countervail the presumption of payment, and require the aid of some other proof; and the case would be the same if the indorsement bore a date within that period, the instrument itself being otherwise subject to the bar arising from lapse of time. Hence the inquiry which is usually made in such cases, namely, whether the indorsement, when made, was against the interest of the party making it, that is, of the creditor; which, in other language, is only inquiring whether it was made while his remedy was not yet impaired by lapse of time. The time when the indorsement was made is a fact to be settled by the jury; and to this end the writing must be laid before them. If there is no evidence to the contrary, the presumption is that the indorsement was made at the time it purports to bear date; and the burden of proving the date to be false lies on the other party. If the indorsement does not purport to be made contemperaneously with the receipt of the money, it is inadmissible as part of the *res gestae.*" In 25 *Cyc.* 1376, the author cites a number of cases in support of the statement in the text: "Indorsements of payments antedating the bar of the statute are admissible as evidence to prove the payment and interrupt the statute, but standing alone they are not conclusive of the fact," and a number of authorities in support of the further statement: "It must be shown by independent evidence that the indorsement was made on the day of the date thereof." In *Post* v. *Mackall,* 3 Bland, 522, CHANCELLOR BLAND said: "The execution of the deed, upon which this claim No. 22, is founded, has been admitted; and there are endorsed upon it several receipts for payments, one so late as the 4th of August, 1826; which, if shown to be truly what they purport to be, would be sufficient to take it out of the statute of limitations. A man can not be permitted to make evidence for himself; and the endorsements by the obligee, such as these, are not admitted to prove the original thing in demand; but being evidence in discharge of the obligor, they are only consequently evidence in favor of the obligee, to take the case out of the presumption arising from

the lapse of time. Even to this extent, however, they are regarded as evidence of a very questionable character, when it is recollected, that the security remains in the hands of the obligee and that he may thus be under a continual temptation to fabricate such endorsements merely for the purpose of sustaining his claim for the balance. But to make such endorsements evidence for this purpose, it is necessary to show, that they were actually made, as they bear date, within the time of limitation; for if they were made after that time, though they may be evidence of actual payments, yet they can not be received as evidence to take the case out of the statute."

The only endorsement on the single bill or note in suit in this case that purports to give the date it was made is the following: "June 2nd, 1912, $500.00 Pd on this note." The evidence relating to these endorsements was not offered for the purpose of removing the bar of the statute of limitations, and the endorsements were clearly not admissible to prove the execution of the alleged single bill. But they were admissions of the plaintiff, against his interest, of part payments of the amount intended to be secured by the single bill, and were admissible as tending to show the amount still due thereon. The effect of this evidence could have been controlled by a prayer properly framed and granted for that purpose. The plaintiff could not, however, avail of these exceptions, as he was not prejudiced by the rulings.

There was no error in the granting of the defendant's prayers *upon the evidence admitted* by the Court below, but we think there was fatal error in the ruling of the Court in the sixth exception, and we must therefore, and because of the errors in the first and fourth exceptions, reverse the judgment and remand the case for a new trial.

*Judgment reversed, with costs to the appellant and new trial awarded.*