CITIZENS' NATIONAL BANK, EXECUTOR, *v.* GEORGE P. PARSONS

[No. 45, October Term, 1934.]

632

*Decided December 14th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*L. Paul Ewell,* with whom was *James M. Crockett* on the brief, for the appellant.

*William H. Price,* with whom were *Staton, Whaley & Price,* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The action in this case was by George P. Parsons against the Citizens' National Bank of Pocomoke City, executor of the will of Ulysses S. Payne, on a writing obligatory, bearing date June 27th, 1927, by which Ulysses S. Payne covenanted to pay to the order of the plaintiff on demand the sum of $10,000, without interest, and, in case of default at maturity, to pay ten per centum additional as collection fee, and to waive demand for payment. Neither the maker nor his executor paid according to the tenor of the instrument, and this default is the breach of covenant alleged in the declaration. The pleadings put in issue the execution of the paper writing, its consideration, whether it was procured by the fraud of the plaintiff, and its discharge by payment. Code, art. 75, sec. 4; *Citizens' Nat. Bank v. Custis*, 153 Md. 235, 138 A. 261.

The testimony on the part of the plaintiff tended to prove the signature and delivery of the document under these circumstances. Ulysses S. Payne went to the banking house of the Citizens' National Bank of Pocomoke City to see Joseph C. Stevenson, its assistant cashier and trust officer. Upon the request of Payne, a blank writing obligatory was handed to Payne, who immediately wrote the single bill in controversy and signed it in the presence of the officer and that of a third party, who was brought in to witness the maker's signature. After its execution, the instrument was placed under seal in an envelope, on whose face the maker wrote the name of the payee and his address in New Jersey. The closed envelope, with the writing obligatory on the inside, was then delivered by the maker to the officer with the instruction that the envelope and writing were to be kept by the bank until after the maker's death, when they were to be delivered by the officer to the payee. The officer then deposited the envelope and obligation in the bank's vault, in the separate file which was provided to keep documents deposited with the institution.

There was further testimony on the part of the plaintiff tending to prove that the obligor, who was the uncle, and the obligee, who was his nephew, had been engaged in financial transactions covering an extended period, and that as a result the uncle became indebted to the nephew, who requested payment toward the close of 1926. The uncle was unable to meet this demand, but stated that he would pay when he could. The following year, in November, the uncle informed his nephew that he could not discharge the loans, but that he had made a note to cover the debt and had left it in bank, and that, if the nephew would go to the bank in Pocomoke City, the officer of the bank with whom the obligation had been deposited would give the instrument to the nephew. According to the testimony of what was said in the same conversation, the uncle instructed the nephew to write to the agent of the depositary that his uncle had instructed the nephew to go and get the note; and that the uncle had further declared that, if the nephew must have the money, he would take care of the loan. Although the parties called the subject-matter a note, there is no doubt that their reference was to the single bill in suit. *Cox v. Hill,* 6 Md. 274, 283, 284.

In accordance with these instructions, the obligee wrote to the bank official, on December 12th, 1927, a letter which was received on the following day. In this letter the obligee requested that the instrument in question be put in the safe deposit vault and kept until the obligee called for it. In obedience to these instructions, the single bill was removed from the original envelope, and the single bill and envelope were placed by the officer in a new envelope, upon whose cover the officer indorsed that the envelope was left by the obligee for safe-keeping. The new envelope, with its contents, was put back where the original envelope had been deposited, and so remained until after the death of the obligor on June 6th, 1932. On the day of the funeral, the bank, after the burial, delivered the single bill and the original envelope to the obligee, but retained the letter of the obligee of December 12th, and the second envelope, until the trial of the action.

On the part of the defendant, no evidence was offered in denial of the execution of the single bill, nor was there any testimony in support of the plea of payment. The defense that the single bill was procured by the fraud of the plaintiff was submitted to the jury, but that presents no question for the appellate court, because the prayers with reference to this subject were not excepted to on the ground that there was no legally sufficient evidence of such fraud. The defendant offered in evidence the duly executed and probated will of the maker, which was executed after the signing of the bill obligatory, and which, after a provision for the payment of all his debts and a gift of his jewelry, directed a conversion of all his property, and out of the proceeds gave two bequests of $500 each, and all the residue in trust for the benefit of his wife for life and then over to his six named nephews and nieces. The brief of the defendant indicates that this testamentary paper was offered for the purpose of establishing a revocation of the bill obligatory as a testamentary paper, if it were of that nature. The bill obligatory, however, was proffered as a contract. The mere fact that there was but one witness to the obligor's signature precluded the paper writing from becoming operative, under any circumstances, as a testamentary disposition. Code, art. 93, sec. 332. The document is either the enforceable written contract of its maker or a nullity.

The other testimony on the part of the defendant was in parol, and tending to establish that the maker died leaving an estate of about $32,000, and that he had been a frugal, prudent, and successful manager of his money, the possessor of funds on deposit in bank that varied, from time to time, in amount, and that he was a lender rather than a borrower. The effect of this testimony, when considered in connection with the adverse admissions and unsatisfactory answers on the cross-examination of the principal witnesses for the plaintiff on the subject of the consideration for the single bill, left the question of consideration *vel non* for the jury to decide, since the presence of a seal, while importing considera-

tion, does not now preclude the defense at law of an entire or part failure of consideration. *Citizens' Nat. Bank v. Custis,* 153 Md. 235, 138 A. 261; *Id.,* 155 Md. 173, 141 A. 556; *Dever v. Silver,* 135 Md. 362, 109 A. 67; *Shaffer v. Bond,* 129 Md. 653, 99 A. 973.

The°principal question on these facts is whether there was any legally sufficient evidence from which the jury could find a verdict for the plaintiff. The first two prayers of the defendant presented this defense.

The defendant's theory, upon which these prayers was based, is that the possession of an agent was merely that of his principal; and that, if the depositary was an agent of the maker of the writing obligatory, this agency terminated with the maker's death, and thereafter the former agent had no power to make an effective delivery of the writing obligatory to the obligee. It is true that if it had been the intention of the maker that the single bill would not be a binding obligation upon him or his estate, nor confer any right upon the obligee nor have any effect whatever, until after the maker's death, the instrument was incomplete and inoperative as a contract, and as a will, if it were in the nature of a testamentary paper, because it was not attested and subscribed by two witnesses as is prescribed by law. Code, art. 93, sec. 332; *Carey v. Dennis,* 13 Md. 1; *Cover v. Stem,* 67 Md. 449, 10 A. 231; *Hearn v. Purnell,* 110 Md. 458, 72 A. 906; *De Grange v. De Grange,* 96 Md. 609, 613, 54 A. 663; *Renehan v. McAvoy,* 116 Md. 356, 81 A. 586; *Howard v. Hobbs,* 125 Md. 636, 94 A. 318; *Ellison v. Clayton,* 164 Md. 38, 163 A. 695.

The testimony on the record tends, however, to prove facts which the defendant's theory ignores, but which, if found by the jury, would render inapplicable the principles of law invoked and the cases cited by the defendant, and would entitle the plaintiff to recover. The paper writing on which the action was brought is not testamentary in form or nature. It is a writing obligatory, whose seal imports a consideration and whose terms declare the covenant to pay is for value received, without offset. The in-

strument expressly waived the benefit of "all right to exemption from execution, as to the debt evidenced by this obligation" and provided for the payment of an attorney's fee for the collection of the debt, and contained a power for the confession of judgment. There was testimony from which it could be found that the actual consideration for the writing obligatory was a subsisting indebtedness of the amount for which the obligation was drawn, and that this indebtedness had never been paid. The past indebtedness of the obligator to the obligee would be a valuable consideration for the writing obligatory and, apart from its being a sealed document, would prevent it from being a voluntary obligation. *Cecil Bank v. Heald*, 25 Md. 562, 573, 574.

The paper writing, therefore, is not within the decisions relied upon by the defendant, but, if delivered as a complete and perfected contract, falls within that line of cases which is represented by *Feeser v. Feeser*, 93 Md. 716, 50 A. 406, where a writing obligatory was executed by the testator in his lifetime for a debt due to the obligee, which he covenanted would be paid, not during his life, but out of his estate by his executor within one year after obligor's death. In holding this a valid obligation, the court stated: "It was said in *Cover v. Stem, supra*, that: 'No precise form of words is necessary to create a bond or obligation. Therefore any memorandum in writing, under seal, whereby a debt is acknowledged to be owing, will obligate the party to pay; for it is said that any words which prove a man to be a debtor, if they be under seal, will charge him with the payment of the money.' Again, it is said in that case that: 'There must be terms employed to create a *debitum in praesenti*, though the *solvendum* may be *in futuro*, and even after the death of the obligor. It would seem to be clear that the relation of debtor and creditor must be created and subsist in the lifetime of the parties to the instrument, though the time of payment may be deferred until after the death of one of the parties.' " Pages, 725, 726 of 93 Md., 50 A. 406, 407; *De Grange v. De Grange*, 96 Md. 609, 613, 614, 54

A. 663; *Junkins v. Sullivan,* 110 Md. 539, 541, 542, 73 A. 264; *Conowingo Land Co. v. McGaw,* 124 Md. 643, 649, 93 A. 222; *Citizens' Nat. Bank v. Custis,* 155 Md. 173, 177, 178, 141 A. 556; *Harper v. Davis,* 115 Md. 349, 357, 80 A. 1012; *Murdock v. Schindel,* 128 Md. 633, 636, 98 A. 149; *Edelin v. Sanders,* 8 Md. 118.

The testimony being sufficient for the jury to find that the instrument here sued on is a complete contract, upon a valuable consideration, it is a good cause of action provided it was delivered, and this delivery may be made to a third party for the use of the obligee. *Supra; Houlton v. Houlton,* 119 Md. 180, 184, 86 A. 514; *Byers v. McClanahan,* 6 G. & J. 250, 256; *Clark v. Creswell,* 112 Md. 340, 342, 76 A. 579. Furthermore, the delivery to a third party may be in escrow or in trust. In an escrow, there is much authority that the parties must enter into a contract with respect to the terms of the deposit of the written instrument. If there should be no contemporaneous contract of the parties at the time of the deposit of the document, but an absolute deposit with a third party for the use or benefit of the beneficiary named in the document upon the happening of a specified contingency, there is authority for holding these circumstances to constitute an escrow, although a trust may be more accurately said to have been created, since, after delivery of the writing obligatory to the trustee or custodian, the subject-matter was held by it in possession for the use and benefit of the fiduciary, and nothing remained to be done by the donor to complete the title of the beneficiary to the subject-matter deposited in trust. A trust is even more clearly indicated where the condition is the death of the settlor, because a delivery conditioned on a condition which cannot fail cannot be accurately held a conditional delivery. 4 *Kent, Commentaries,* \*454, \*455; *Perry on Trusts* (7th Ed.) secs. 86, 68, 98; *Pomeroy's Equity Juris.* (4th Ed.) sec. 998; *Coyne v. Supreme Conclave,* 106 Md. 54, 57, 66 A. 704; *Snader v. Slingluff,* 95 Md. 356, 52 A. 510; *Gordon v. Small,* 53 Md. 550, 558, 559; *McDevit v. Sponseller,* 160 Md. 497, 499, 500, 154 A. 140; *Tiffany on*

*Real Property* (2nd Ed.) sec. 462, p. 1783; *Conditional Delivery of Written Contracts,* by Arthur L. Corbin, 36 Yale Law Journal, 443, published in *Selected Readings on the Law of Contracts,* at pages 901, 904.

In the present case, there was no contemporaneous agreement of the parties, but a perfected instrument of writing under seal was given by its obligor to a third party to keep safely for delivery by the custodian to the obligee upon the certain contingency of the obligor's death. The form of the writing obligatory and the terms used, together with the parol testimony that tends to prove that the translation of an indebtedness in parol to one by a specialty, which was to be delivered by the custodian to the obligee upon the death of the obligor, was for the benefit of the obligee and intended by the obligor to be an irrevocable act. The delivery of the writing obligatory was at the time of its conditional delivery to the custodian or trustee, but the absolute right to the document did not pass until the happening of the event which satisfied the condition upon which the document was deposited in trust. In short, the delivery of the writing obligatory and the passage of the absolute ownership of the writing obligatory to the fiduciary were at different times. In the case at bar the condition of the settlor's death was independent of any act of the obligee, and was bound to happen in the mere running of time. During this intervening period between the conditional delivery and the satisfaction of the condition by the death of the settlor, the right of exclusive possession of the specialty was in the trustee, and, upon the death specified, the prospective right of absolute ownership of the specialty in the fiduciary during the period of the trust became enlarged to a present absolute ownership on the death of the settlor, when the specialty became completely operative in accordance with its expressed words. See *Tiffany on Real Property* (2nd Ed.) sec. 462. So, the form of the document and its delivery to the custodian or trustee in trust for the benefit of the obligee, without the reservation of the power in the obligor of revocation, is a clear

manifestation of the obligor's intention that the instrument was irrevocable. The circumstances speak to the same effect. The trust was not to keep as the agent, and, therefore, subject to the order, of the depositor; but, according to testimony from which the jury could thus find, was to hold for the use and benefit of the obligee, at the happening of an inevitable event. Since the deposit was in trust, it was not necessary, as some authorities hold in the case of an escrow, for the obligor and obligee to enter into a contract for the deposit of the specialty with a third party in pursuance of the terms of the contract, nor for notice of the execution and deposit of the writing obligatory to be given the beneficiary. In other words, a trust may be created by the settlor independently of an agreement on its terms between the settlor and the beneficiary, and of any knowledge by the latter of the creation of the trust. *Smith v. Darby*, 39 Md. 268, 277, 278; *Clark v. Callahan*, 105 Md. 600, 614, 615, 66 A. 618; *Perry on Trusts* (7th Ed.) secs. 98, 105. See *Cases on Bills and Notes, Ames*, vol. 2, pp. 878, (18), 708, 711, note 1; *Daggett v. Simonds*, 173 Mass. 340, 53 N. E. 907; *Giddings v. Giddings' Admr.*, 51 Vt. 227; *Blanchard v. Sheldon*, 43 Vt. 512; *U. S. Fidelity & Guaranty Co. v. Riefler*, 239 U. S. 17, 36 S. Ct. 12, 60 L. Ed. 121.

Since the declaration of trust was beneficial to the obligee or beneficiary, his acceptance of the trust will be presumed until his disclaimer be shown. There is, however, further testimony tending to prove that the deposit of the specialty in trust was communicated to the beneficiary during the lifetime of the settlor or obligor, and that the beneficiary, who was then at once the obligee under the specialty and the creditor of the obligor on an open account in an amount for which the specialty was drawn, thereupon accepted the declaration of trust in the place of the long outstanding open account; and that this acceptance, during the joint lifetime of the settlor and creditor, was consummated, and the trust fulfilled and determined, by the death of the settlor, when

the beneficiary and obligee received from the trustee the specialty or writing obligatory now in suit. *Supra. Houlton v. Houlton,* 119 Md. 180, 187, 86 A. 514.

It follows that the trial court was not in error in refusing to instruct the jury to find for the defendant. All the other prayers of the defendant were granted, and they left to the jury the defenses of fraud, incomplete gift, absence of consideration, and nondelivery of the specialty.

The granted prayers offered by the plaintiff submit to the jury the finding of facts that would entitle the plaintiff to recover in a form which would not constitute reversible error.

The testimony admitted, over the objection of the defendant, as is shown by the first five bills of exceptions, were the writing obligatory, with the envelopes, and their indorsements, the time when the plaintiff first learned of the writing obligatory, and the fact he wrote, and the letter he wrote, to the officer of the bank, were all relevant and material since they were the cause of action, with an envelope bearing an identifying and directory indorsement, and facts that bore directly on the question of the plaintiff's acceptance of the obligor's conditional delivery of the specialty.

The issues were fully presented by the granted prayers, and, finding no reversible error, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*