**CENTURY INDEMNITY COMPANY**

v.

**STATE OF MARYLAND, Real Estate Commission, to the use of SIGLER & MEGARY, Inc., Elmer W. Strock, Helen D. Strock, Anna Zora Yinger, George Schaefer, Doris S. Schaefer, Robert E. Holland, Martha C. Holland, Anthony Papa, Rose Papa, and all other persons not known to Plaintiff who may have a claim to the fund prayed to be deposited in this Court.**

**Civ. No. 8771.**

United States District Court
D. Maryland, Civil Division.

Sept. 25, 1956.

Wm. B. Somerville, Baltimore, Md., for plaintiff.

Walter C. Mylander, Jr., and Charles C. W. Atwater, Baltimore, Md., for Sigler & Megary, Inc.

J. Mayer Willen, Baltimore, Md., for Elmer W. Strock and Helen D. Strock.

Nelson R. Kerr, Towson, Md., for Anna Zora Yinger.

John W. Moyer, Edward L. Keefer, Keefer & Moyer, and George L. Lochboehler, Baltimore, Md., for George Schaefer and Doris S. Schaefer.

Max L. Berman and Norman Hochberg, Baltimore, Md., for Robert E. Holland and Martha C. Holland.

Alfred J. O'Ferrall, Jr., and John P. O'Ferrall, Baltimore, Md., for Anthony Papa and Rose Papa.

THOMSEN, Chief Judge.

The principal question in this case is whether, under the particular facts and circumstances, the surety on a bond given by a real estate broker pursuant to Art. 56, secs. 219–239 of the Maryland Code, is liable for the claim of another broker for a share of the commission on a sale of real estate, where the principal on the bond was the "listing member" and the claimant was the "selling member", as defined in the by-laws of the Multiple Listing Bureau of the Real Estate Board of Baltimore. Other simpler questions will be disposed of first.

The amended complaint alleges that the various defendants had made claims against plaintiff as surety on the bond of Harvey T. Bowman in excess of the penalty of the bond, which was $2,500. The claims asserted by the defendants in their answers totalled $8,102.10. The complaint further alleged that one of the defendants contended that Chapter 631 of the Laws of Maryland of 1955, Code Supp.1956, art. 56, § 224(b), had automatically increased the penalty of the bond to $5,000. Another defendant contends that the $2,500 penalty represents the maximum amount which can be recovered by any one claimant, but that the total liability under the bond is not limited to $2,500. The plaintiff deposited $2,500 in the registry of the court, and alleges jurisdiction under Title 28 U.S. C.A. §§ 1332 and 1335.

Since all of the parties claiming under the bond are citizens of Maryland, this court does not have jurisdiction under sec. 1335, the Federal Interpleader Act. But since the plaintiff surety is a Connecticut corporation and the amount in controversy exceeds $3,000, there is jurisdiction under sec. 1332.

The surety has not disclaimed all possible interest in the fund; it takes the position that, unless claims in excess of $2,500 are approved by the court, the surety will be entitled to any balance. Therefore, under the Maryland law this is not a bill of interpleader which would entitle the plaintiff to have the fee of its attorney deducted from the amount of the fund. Steffey, Inc., v. American Bank Stationery Co., 161 Md. 124, 155 A. 306; Miller on Equity Procedure, pp. 824–825. But the parties are agreed that the court should treat the case as an action for declaratory judgment and other relief in the nature of a bill of interpleader, Miller, op. cit. p. 825, note 4, and determine the respective rights of the various parties.

The bond was issued on October 2, 1954, and accepted by the Real Estate Commission; it expired on October 2, 1955. The penalty of the bond was $2,500, the amount specified by Chapter 374 of the Laws of Maryland 1951, codified as Art. 56, sec. 224(b), which read as follows: "and provided further that every licensed real estate broker shall provide a corporate bond in the sum of $2,500 and every licensed real estate salesman shall provide a corporate bond in the sum of $1,000 to protect the public against any loss resulting from violation of this sub-title by such brokers or salesmen". Chapter 631 of the Acts of 1955, effective June 1, 1955, amended sec. 224(b) by changing the figure $2,500 in sec. 224(b) to $5,000, and making other changes immaterial here. After conferring with the Attorney General of Maryland, the Real Estate Commission decided not to require brokers to file new bonds immediately after June 1, 1955, but to require them to file new bonds in the penalty of $5,000 as existing bonds expired. No bond was filed by Bowman after the expiration of the bond involved in this suit. I hold that the statute did not have the effect of increasing the penalty of the existing bond to $5,000.

After referring to Chapter 374 of the Acts of 1951, the bond provided:

"Now, Therefore, the condition of this obligation is such that if the principal shall conduct himself and his business in accordance with the requirements of the said Laws of Maryland, then this obligation shall be null and void; otherwise to remain in full force and virtue and any person aggrieved thereby shall have, in addition to his right of action against the principal hereof, a right to bring suit against the surety on this bond, either alone or jointly with the principal hereof, and to recover in an amount not exceeding the penalty of this bond any damages sustained by reason of any act, representation, transaction, or conduct of the principal which may be prohibited by said Act or enumerated as one of the causes for suspension or revocation of a license granted thereunder.

"Provided, However, that the total liability of the surety hereunder in no event is to exceed the amount of this bond."

There is no merit in the contention that the total liability of the surety under the bond might exceed $2,500.

All of the defendants base their claims under the bond on the contention that Bowman violated Art. 56, sec. 231(g), now 231(h), as amended in 1955, Code Supp.1956, art. 56, § 231(h), in that in performing his duties as a real estate broker he was guilty of "Failing, within a reasonable time, to account for or to remit any moneys coming into his possession which belong to others". All of the parties are agreed that Bowman did so fail with respect to moneys which came into his possession belonging to the defendants Strock, Schaefer, Holland and Papa. Some of the parties question whether the claim of Sigler & Megary, Inc., is within the purview of the statute and the coverage of the bond. That claim is based upon the following facts.

J. Neil McCardell and wife entered into a Standard Multiple Listing Contract with Bowman, authorizing him to

sell their property 312 Overhill Road in Baltimore City. Pursuant to that contract, and the By-Laws and Rules of the Multiple Listing Bureau of the Real Estate Board of Baltimore, Bowman "multiple listed" the contract, and the other members of the Bureau were notified. Sigler & Megary, Inc., a member of the Bureau, produced a purchaser for the property, and a standard contract of sale, in the form approved by the Real Estate Board of Baltimore, was executed. The contract of sale stated that the property was being sold "at and for the price of Fifty-Five Thousand Dollars ($55,000.-00) of which Two Thousand Five Hundred Dollars ($2,500.00) have been paid prior to the signing hereof", the balance to be paid in cash to the seller on the date of settlement. The last paragraph of the printed form of the contract read as follows: "Seller hereby agrees to pay commission on this sale, in accordance with the Standard Schedule of Commissions of the Real Estate Board of Baltimore to Sigler & Megary, Inc." In the contract which was executed, the words "Sigler & Megary, Inc." were stricken out and in their place the words "Harvey T. Bowman, in cooperation with Sigler & Megary, Inc." were typed. It is unusual in Baltimore to name two real estate brokers in a contract of sale. Even where two brokers are to share in the commission, it is customary to provide for the payment of the commission to the seller's broker.

Sec. 8(b) of the By-laws and Rules of the Multiple Listing Bureau provides:

"Members shall have the right to negotiate the sale or rental of any multiple listed property, but all such negotiations for either the sale or rental must be conducted through the member who holds a multiple listed contract for either the sale or the rental of such property. * * * The listing member shall hold all deposit money on contracts. All contracts of sale, accompanied by a reasonable deposit, must be promptly submitted to the owners of the property involved * * *."

Sec. 9 provides, in part:

"*Division of Commissions:* Members of the Bureau shall divide all commissions on all cooperative sales and rentals, as follows:

"(a) On all sales of multiple listed and nonmultiple listed properties, * * * 4% to the Bureau, one-third of the balance to the listing member, and the remaining two-thirds to the selling member, * * *."

Pursuant to the general custom in Baltimore City and sec. 8(b) quoted above, the deposit of $2,500 referred to in the contract of sale was paid to Harvey T. Bowman, agent. Because of an easement affecting the property, the purchase price was reduced by agreement of the parties to $52,500. This $2,500 reduction had no relation to the deposit of $2,500. The commission on the reduced price, in accordance with the standard schedule of commissions of the Real Estate Board of Baltimore, was $2,575.

Contrary to the usual custom, Bowman did not appear at the settlement for the property; no express agreement was made at that time about the $2,500 held by Bowman, but the balance of $75 due on the total commission was paid by the sellers to Sigler & Megary, Inc.

The relationship between the seller's broker, holding the deposit, and the other parties to the transaction has never been decided by the Maryland courts. Sigler testified that such a deposit is held by the broker in escrow. I agree. The general rule is that a deposit in escrow creates a trust at the time of the delivery in escrow. Restatement of the Law, Trusts, sec. 26, Comment (i), sec. 32, Comment (c), although for certain purposes a delivery in escrow may be distinguished from a trust. Citizens' National Bank of Pocomoke City v. Parsons, 167 Md. 631, 638, 175 A. 852; Curley v. Wolf, 173 Md. 393, 196 A. 285.

There is no single beneficiary of the trust in such a deposit. If the title of the seller is defective, the purchaser

is entitled to receive his money back; he has a contingent beneficial interest in the deposit. But, if the title is good and the sale is consummated, the deposit belongs to the seller, who has acknowledged receipt of it in the contract of sale. It is his money, held by his agent as trustee.

Ordinarily the contract calls for the payment of the commission to the seller's broker. The commission may be more or less than the amount of the deposit. In some cases the contract may call for the payment of the commission to two or more brokers, jointly or severally. In the instant case the sellers agreed to pay the commission to "Harvey T. Bowman, in cooperation with Sigler & Megary, Inc." This provision is unusual and is not free from ambiguity.

In the ordinary case the seller's broker, holding the deposit, accounts to the seller at the settlement, pays over to the seller any amount by which the deposit exceeds the commission, and if any other broker is entitled to a share of the commission, pays such share to him then or shortly thereafter. If the seller should demand that the broker, as trustee, pay over the full amount of the deposit to him, the broker would have the right to set off against the claim of the seller the total commission due, and would be obligated to account to any other broker for such other broker's share. This conclusion is supported by the fact that in the ordinary case the other broker has no claim against the seller.

[5] Whether in such a case (a) the amount retained by the seller's broker is impressed with a trust in favor of the other broker to the extent of his share of the commissions, or (b) such other broker has merely an unsecured claim for his share of the commissions, is affected by the agreement between the brokers, if any, by the By-laws of the Multiple Listing Bureau, if they are both members of the Bureau, and by the terms of the contract of sale of the property. Whether such other broker has a security interest or an unsecured claim is important in determining whether any of the money held by the seller's broker

"belongs to" such other broker, within the meaning of sec. 231(g), now 231(h). In order to recover on the bond, such other broker must show that the seller's broker is holding money which belongs to him, the buyer's broker, and also that he is a member of the "public", entitled to the protection of the bond under sec. 224(b).

The latter question has not been decided in any case cited to, or found by, me. However, the question whether a real estate salesman, employed by a real estate broker on a commission basis, is entitled to the benefit of a bond under a somewhat similar statute has been passed upon by two courts. In Sigler v. Massachusetts Bonding & Ins. Co., 71 Ohio App. 425, 50 N.E.2d 390, 392, the Court of Appeals for Summit County decided that the salesman was entitled to the benefit of the bond. After noting that the statute required that "brokers furnish a bond indemnifying 'any person' for damages suffered by the operation of such business in violation of said act", the majority stated: "we can think of no good reason for concluding that the Legislature intended thereby that the seller or buyer of real estate through a real estate broker should be protected by the act, but that a salesman, operating in the business upon a commission basis, should not likewise be protected." One judge dissented on the ground that "a statutory 'associate' of the defendant broker, does not fall within the class of persons which the Legislature meant to protect * * *." In Eberman v. Massachusetts Bonding & Ins. Co., 41 A.2d 844, 845, the Municipal Court of Appeals for the District of Columbia decided that the salesman was not entitled to the benefit of the bond. The majority noted that the purpose and design of the act, as stated in its title, was "'to protect the public against fraud in real-estate transactions'", and said: "When the legislature enacts a statute regulating a business for the purpose of protecting the public against existing or potential evils in that business, those engaged in the business are not generally regarded as a part of that public. The public is

protected against them and not they against their fellow businessmen." The majority held that "even if a real estate salesman be considered more in the nature of an independent contractor or business associate, it is plain that the relation is an entirely different one from that between the broker and those of the general public for whom the broker acts in his representative capacity." The dissenting judge felt the court should have followed the Sigler case, supra.

I do not believe that the Maryland legislature intended that every dispute between brokers with respect to the division of commissions should justify an action on the bond. But it is not necessary in this case to decide whether the surety would be liable to another broker in every conceivable situation or even in the ordinary situation. This case must be decided on its own facts. Bowman did not appear at the settlement for the property, and did not account to the sellers or to anyone else for the amount of the deposit which he had received. The contract of sale names both brokers; the sellers agreed to pay the commission to "Harvey T. Bowman, in cooperation with Sigler & Megary, Inc." Sigler & Megary, Inc. did not attempt to collect its full share of the commission from the sellers at the time of the settlement; but it did not release the sellers from any obligation with respect thereto. This is not an action at law on the bond, but an equity proceeding, where the court has broad and flexible powers to prevent circuity of action. Under the facts and circumstances of this case, the sellers' equitable interest in the deposit, which was clearly within the purview of the statute, was transferred at the time of the settlement to Sigler & Megary, Inc., to the extent of the balance of its share of the commission, so that the deposit retained by Bowman is now impressed with a trust in favor of Sigler & Megary, Inc. to the extent of such balance. If such an equitable transfer were not recognized, Sigler & Megary, Inc. would still

have a claim against the sellers, which, if paid by the sellers, would entitle them to a claim under the bond; to avoid circuity of action, that claim should be allowed and paid to Sigler & Megary, Inc. in this case.

Under either view Sigler & Megary, Inc. is entitled to share in the fund in the proportion that the balance of its claim, $1,573, bears to the total of all claims allowed. The claim of Elmer W. Strock and Helen D. Strock is allowed in the amount of $115. The claim of George Schaefer and Doris S. Schaefer is allowed in the amount of $500. The claim of Robert E. Holland and Martha C. Holland is allowed in the amount of $600. The claim of Anthony Papa and Rose Papa is allowed in the amount of $280.[1]

The parties will agree upon an order distributing the entire sum of $2,500, less the costs of this case, among those five defendants, in the proportions that their respective claims bear to the total claims allowed.

---

1. The claim of Anna Zora Yinger in the amount of $5,034.10 was dismissed pendente lite.