MEISE ET AL. *v.* TAYMAN ET AL.

[No. 203, September Term, 1959.]

*Decided May 18, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*C. Maurice Weidemeyer,* with whom was *Thomas M.
Schifanelli* on the brief, for appellants.

*Theodore G. Bloom,* with whom were *Albert J. Goodman*
and *Vernon G. Frame* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

George W. B. Meise, individually and as administrator
of the estate of Richard Percy Tayman, and George Thomas
Meise and wife, appeal from a decree setting aside a deed
from Tayman to Hillman, trustee, dated November 19, 1943
and recorded May 6, 1958, and a second deed from Hillman,
trustee, to Tayman and George W. B. Meise, for their lives,
with remainder to George Thomas Meise, dated November
22, 1943 and recorded May 6, 1958. The chancellor based
his holding upon his conclusion that there was no effective
delivery of the deeds and that the first one could not be given
effect as a will. Hence, he signed a decree declaring them null
and void, and declaring the heirs at law of Tayman to be the
owners of the property undisposed of in his lifetime, since

he died intestate. The appellants contend that there was a valid delivery; that the chancellor erred in his rulings on the evidence; and that the deeds can be sustained and given effect either as deeds or as a will.

Tayman, a bachelor, acquired a joint interest with his father in a farm of about sixty-five acres of land in 1915. The father's interest was released to him in 1922. The farm was improved by a large dwelling house. In 1921, his sister, Laura, married George W. B. Meise, and they moved to the farm and lived in the house with Tayman. It is undisputed that she lived there until her death in 1943, and that George W. B. Meise and their son, George Thomas Meise, who was born in 1930, lived there until the latter married and moved into his own home in 1955. The record does not disclose just what arrangements were made between the parties, in regard to expenses or working arrangements. The appellants undertook to show that Tayman and the elder Meise were partners in the farm operation, that all of the Meises contributed their services, and that this was the consideration for the deeds in question. The answer also set up claims for uncompensated services in nursing and caring for Tayman, whose eyesight was failing in 1943, and who became totally blind several years before his death. The chancellor refused to admit testimony on the subject, because of the Evidence Act, sometimes called the Deadman's Statute, Code (1957), Art. 35, sec. 3. The appellants strongly urge that the subject was opened by the opposite parties, by requests for admission of facts prior to trial pursuant to Maryland Rule 421. In the view we take of the case, we need not pass on the point.

In November, 1943, Tayman and the elder Meise went to the office of Noah A. Hillman, an attorney in Annapolis, Maryland. He knew both of them and had previously represented them. He prepared certain deeds at their request. The first deed was from Tayman to Hillman, trustee, and recited that "in consideration of the sum of $5.00 and other good and valuable considerations" Tayman granted and conveyed to "Hillman, Trustee, his successors and assigns, in fee simple," the tract therein described, "to the proper use and bene-

fit of the said Noah A. Hillman, Trustee, nevertheless, to immediately re-convey the said land unto Richard P. Tayman and George W. B. Meise, for and during their joint lives and upon the death of the survivor of them, then to George Thomas Meise, his heirs and assigns, in fee simple; * * *." The grantor covenanted for special warranty and further assurances. It was signed and sealed by Tayman a few days later, not in Hillman's office but at Fort Meade where he was taken by a friend. It was witnessed by Rodman I. Gilbert, and a certificate of a notary public, M. Vivian Duvall, in the usual form, was attached.

The second deed, from Hillman, Trustee, to Tayman and George W. B. Meise, with remainder to George Thomas Meise, was in substantially the same form, and duly executed and acknowledged by Hillman. Both deeds contained a notation "no stamps required". Hillman was paid by the elder Meise for the preparation of the deeds. Hillman testified that he took them to the Courthouse for record a few days later, but did not record them because he found that taxes for the current year were unpaid. He wrote Meise calling his attention to this fact, but received no response. The deeds remained in Hillman's office until after Tayman's death on January 15, 1958, when he delivered them to the attorney for George W. B. Meise, who had them recorded.

Between November 22, 1943 and December 19, 1956, while the two deeds remained in Hillman's custody, Tayman executed, as sole grantor, fifteen separate deeds by which he conveyed away approximately fifty acres of the original sixty-five. The first of these deeds was dated November 23, 1946, and the last December 19, 1956. One of them conveyed a parcel to George Thomas Meise, another to George W. B. Meise, with remainder to George Thomas Meise. The testimony is uncontradicted that all of these conveyances were made with the full knowledge and approval of George W. B. Meise. After recording the deeds under attack, the grantees executed confirmatory deeds to the parcels conveyed out of the original tract. Hillman testified that at no time, subsequent to the execution and the leaving of Tayman's deed to him, did Tayman, or Meise, ever indicate any desire to cancel it, or

# 430

request its return. On the other hand, neither Tayman nor the elder Meise ever requested him to record the deeds, after receiving his letters about the unpaid taxes, even though it seems that the taxes were paid from year to year thereafter. Meise testified that the reason why he did not insist that the deeds be recorded was that his son was a minor in 1943. He was not permitted to explain further, as that involved a conversation with the decedent.

Gilbert testified that Tayman told him, after he had acknowledged the deed to Hillman, Trustee, "If I have this deed properly taken care of I will be in a position to hold onto my property. If I should die it will go right to George and Tommy, because I want Tommy to eventually have it all." In 1957, Tayman said to the witness, "I am liable to die at any time, but I think I got everything under control. If I should outlive George for any reason, I have got the property so I can take it back. If George outlives me, Mr. Hillman has only got to put it on record and that's it." In cross-examination the witness said Tayman told him, "as long as that property wasn't on record, all he had to do was to go down to Mr. Hillman's office and get the deed back and destroy it I guess, but he also had an impression at the same time that deed existed that if he died it would go in the channel to which he had so directed. That was his opinion." Tayman also said, "it will just be better than a will."

We cannot agree with the chancellor that there was no valid delivery. The grantor, Tayman, signed, sealed and acknowledged a deed to "Hillman, Trustee", conveying the property to him in fee simple, in trust to reconvey to the parties mentioned. Tayman handed the executed deed to Hillman. Hillman then signed and acknowledged the second deed, as he was obligated to do. Even though the deeds had not then been recorded, it would seem that the unconditional delivery to a third person for the grantees would pass title as between the parties, and that the grantor retained no power to alter or reclaim the deed. Cf. *Clark v. Creswell*, 112 Md. 339, 75 Atl. 579; *Krach v. Carson*, 150 Md. 659, 133 Atl. 306, and *Citizens' Nat. Bank v. Parsons*, 167 Md. 631, 638, 175 Atl. 852. Code (1957), Art. 21, sec. 16 provides that deeds

properly executed and acknowledged may be recorded after the time prescribed by law, and take effect as against the grantor and his heirs. See *Zulver Realty Co. v. Snyder,* 191 Md. 374, 383, 62 A. 2d 276. Cf. *Messick v. Pennell,* 182 Md. 531, 539, 35 A. 2d 143.

The deeds were prepared at the joint request of the parties, and paid for by the grantee. The attorney did not execute the second deed until the first deed had been executed and was in his possession. There is no evidence that the grantor, verbally or otherwise, ever attached any condition to his manual delivery of the first deed to the trustee. The attorney did, in fact, attempt to record the deeds, and would have done so if the current taxes had been paid. He called attention to the open taxes by two letters addressed to the grantee, Meise, not to the grantor. It seems clear that the trustee would have had no legal right to return the deeds to the grantor without the consent of all the beneficiaries named in the first deed, cf. *Citizens' Nat. Bank v. Parsons, supra,* and *Gordon v. Small,* 53 Md. 550, 557, even though Tayman had the impression, undisclosed to the trustee, that he could "take the deed back and destroy it", in the event that the elder Meise predeceased him. Cf. *Loughran v. Kummer,* 146 Atl. 534 (Pa.), and *Herzing v. Hess,* 58 N. W. 2d 430 (Wis.). Of course, manual tradition is not conclusive. There must be an intention to create a present interest, but it is generally held that if there is such an intent it will not be vitiated, even by the retention of a life estate, or, if the transfer was in trust, even by an express power to revoke. See 3 American Law of Property §§ 12.66, 12.67; Restatement, Trusts (2d ed.) § 56 Comment (b) and § 32 Comments (c), (d) and (e); Scott, Trusts (2d ed.) §§ 56.1, 57.1. Cf. *Bowie v. Bowie,* 208 Md. 623, 626, 119 A. 2d 436, and *Rippon v. Mercantile-Safe Dep.,* 213 Md. 215, 230, 131 A. 2d 695. See also Notes 11 A. L. R. 23, 31 A. L. R. 2d 532, and *Ellison v. Clayton,* 164 Md. 35, 38, 136 Atl. 695. We think the evidence discloses an intention to create a present interest in the instant case.

We find nothing to the contrary in the cases cited and relied upon by the appellee. In *Renehan v. McAvoy,* 116 Md.

432

356, 81 Atl. 586, the deed in question was left with the Register of Wills, as a mere custodian and not as trustee, with directions to record it only after the death of the grantor. The grantee was never informed of the matter, and the grantor retained the right to reclaim the deed from the custodian, as his agent, at any time. It was held, on the facts, that there was no intention to create a present interest. It is generally held that a delivery to a third person, for recording only after the death of the grantor, is a good delivery, in the absence of special circumstances showing that the grantor retained complete dominion in the meantime. See Note 52 A. L. R. 1222. In *Buchwald v. Buchwald,* 175 Md. 115, 199 Atl. 800, the deed was handed to the grantee, not to a third person, with an express direction not to record it during the grantor's lifetime, and with express reservation of a right to retake and cancel it if the grantee predeceased the grantor. Insofar as that decision may be said to rest upon the proposition that there cannot be a delivery in escrow to a grantee, its authority is shaken by the statement to the contrary in *Chillemi v. Chillemi,* 197 Md. 257, 264, 78 A. 2d 750. In the *Chillemi* case, there was a breach of an express condition that the grantee would not record the deed, if he returned from a certain dangerous mission. Cf. *Smith v. Wilson,* 171 F. 2d 824 (D. C.).

The chancellor stated in his opinion that it was unnecessary "to determine whether Mr. Hillman was the agent of the Grantor or Grantee for the reason that the Grantor's acts in conveying property included in the original deed showed conclusively that he did not intend to part with control or dominion over the property." We do not agree. The delivery to the trustee having been effective and unconditional, the title of the grantees was vested and beyond the right of the grantor to deal with without the consent of the grantees. *Gordon v. Small, supra.* It is held generally that where a deed is delivered to custodian or escrow agent for later delivery to the grantee, the later delivery relates back to the first so that the deed takes effect as of the date of the original delivery. In such case the grantee is protected as to an intervening purchaser or lienor with notice. 3 American Law

of Property § 12.67, pp. 319-320. The testimony is uncontradicted that the conveyances of portions of the property were made with the full knowledge and consent of the co-tenant for life and George Thomas Meise, the remainderman, since becoming of age, has joined in confirmatory deeds. The consent of the grantees to the alienation of a part of the property originally conveyed to them — an alienation the grantor had no right to make without their consent—cannot affect the legal operation and effect of the grant, as between the parties, of the remaining fifteen acres now in controversy.

Since we sustain the validity of the deeds in question, we do not reach the questions of the admissibility of evidence as to transactions with the decedent, or of whether, in any event, the deed to Hillman, Trustee, could be given effect as a covenant to stand seised, or as a will.

> *Decree reversed and case remanded for the entry of a decree not inconsistent with the views here expressed, costs to be paid by the appellees.*